## 21197. CRENSHAW v. THE STATE.

DECIDED JUNE 19, 1931.

*E. P. & J. Cecil Davis,* for plaintiff in error.

*M. L. Fells, solicitor-general,* contra.

LUKE, J. The indictment in this case charges that on August 1, 1930, in Warren county, Henry Crenshaw, Joe Crenshaw, Culver Humphrey, Gahn Crenshaw, and Woodrow Crenshaw manufactured spirituous liquors. All the Crenshaws were tried jointly and were convicted of the offense charged. Joe Crenshaw here excepts to the overruling of his motion for a new trial.

Earnest Peek, sworn for the State, testified that at about 5 o'clock in the morning in August, 1930, he saw all the Crenshaws named in the indictment, at a still in Warren county; that they "were trying to put the whisky on" witness, and he lay in wait to catch them; that witness lay behind a bush and saw parties approach the still; that Henry had something that looked like the cap, Gahn the pot, Woodrow the worm, and "some of them" a sack, the contents of which were unknown to witness; that "they set the still up;" that Gahn "told Joe, or some of them, about getting wood, and they got into a squabble, and one of them finally got the wood, and one of them  . . built the fire," and "one of them wrenched the pot out;" that "they got the fire up, and got the pot, still, and things on,  . . built the fire, and

one of them dipped the beer up;" that Gahn filled the pot with beer; that witness had "seen two boxes or barrels of that stuff" there the day before; that witness went to Mr. Bob Rainwater's and told him "to call Mr. DeWitt, the sheriff of Taliaferro county, and Mr. Hogan, and let them come out and get them;" that witness remained in hiding five or six minutes—"saw them when they got the still on top of the fire," and heard one of them say, "We better cap it up," and left; and that the still was in Warren county.

G. P. Hogan, sworn for the State, testified in part as follows: "I received information as testified to by this negro from sheriff Edwards as coming from this negro, and I went. I found a furnace there, something like between a quarter and a half mile from Henry Crenshaw's house down towards a small sawmill, right where sheriff Edwards told me that the still was reported to him at. We found about a ten or twelve gallon copper still, copper worm, and condenser, all hid around this place, between the still site and Mr. Crenshaw's house. Everything was hid up towards his house. That was in Warren county. . . There was some cattail that had been run; I could tell from that that liquor had been run at that place. . . I have been up there on or around Mr. Crenshaw's premises several times in the last four years. I have made a search around there in the last twelve months. I found a furnace just below Earl Peek's spring. Earl Peek moved up there since Christmas. Before I found that still I had information from Earl Peek. Following that information I went down to the Darden house, looking for beer, and could not find it, and I started back to Earl Peek's house and run up on this still. . . This still was 125 to 150 yards from Earl Peek's house. It is better than a quarter of a mile to Mr. Crenshaw's house, and around the road it is further. . . I don't know whose land it was on."

Henry Crenshaw stated to the jury that Peek swore against him about the still because he and his boys caught Peek running whisky there and "turned him up," and that he knew nothing about the still and had nothing to do with it. Gahn Crenshaw stated to the jury that he knew nothing about the still, and that the negro, Peek, was mad because they got a true bill against him, "and is trying to switch it off on us." Woodrow Crenshaw stated to the jury that he did not know "a thing in the world about this stilling

business." The movant, Joe Crenshaw, stated to the jury that he had never seen a still in operation, and that he did not know anything whatever "about it."

Fred Baker, sworn for the State, testified: "I know Mr. Henry Crenshaw. I know Earl Peek. On the first Sunday in October Mr. Crenshaw came to my house—that was last Sunday. . . He asked me to swear against Earl Peek—asked me would I swear I saw Earl Peek making liquor; and I told him, 'No, sir,' I could not swear that when I had never seen it. . . He stayed there a while after that and left. He said Earl Peek was trying to put a still on him where Mr. Hogan found a still place, and he said he had to defend himself, and he thought I could help him." We have not presented all the testimony of the witnesses in the case, but we think we have set out enough of the evidence to show the nature of the transaction and illustrate the issues presented.

■ Special ground 1 complains that the trial judge erred in allowing the witness Peek to testify as follows: "I went back and got my mule and went up to Mr. Bob Rainwater's. I told Mr. Rainwater to call Mr. DeWitt, the sheriff of Taliaferro county, and Mr. Hogan, and let them come and get them. I stayed there to Mr. Bob's store and filling station, and went to Crawfordville, and stayed there until about five o'clock that evening." We quote from the record: "Mr. Davis: 'We object to it. Any statement made out of the presence of these defendants can have no probative value; and if it is material, and if it is admitted for the purpose of explaining this man's conduct, this man's conduct is not under investigation.' Mr. Felts: 'These statements that I propose to prove he made to Mr. Rainwater are not offered for the purpose of showing that they were true. It is offered for the purpose of showing that he reported it to Mr. Rainwater.' The Court: 'I will admit it.'"

"Where a conversation is referred to by a witness, and is relevant only as matter of inducement to explain why he entered upon a certain investigation, it is better to admit the fact of the conversation, but to exclude the details and particulars of the same." *Kelly* v. *State,* 82 *Ga.* 441 (3) (9 S. E. 171). In that case Chief Justice Bleckley, speaking for the court, said: "The court admitted, in behalf of the State, a conversation of one witness with a third person, as mere inducement, to account for investigation

by the witness. This evidence did no harm; but we think it would have been more regular to admit only the fact that a conversation occurred, without going into the particulars of what he said. The fact itself was all that was needed to show inducement, and certainly the conversation was not admissible for any other purpose." The gist of the witness's answer set out in this ground is that he reported the occurrence he had seen at the still, and "told Mr. Rainwater to call Mr. DeWitt . . and Mr. Hogan, and let them come and get them." The other portions of the answer appear to be impertinent and harmless. The testimony objected to does not appear to have been hurtful to the defendant's case. Furthermore, the witness Hogan testified as follows, without objection: "I received information as testified to by this negro," etc. See Hogan's testimony, supra. We hold that this ground does not show reversible error.

■ Special ground 2 complains that the court erred in admitting the following testimony of the witness Fred Baker: "On the first Sunday in October Mr. Henry Crenshaw came to my home—that was last Sunday, Sunday before court week. He asked me to swear I saw Earl Peek making liquor, and I told him, 'No, sir,' I could not swear that when I had never seen it, and that nobody could not offer me enough money. He stayed around there a while after that and left. He said Earl Peek was trying to put a still on him where Mr. Hogan found a still place, and he said he had to defend himself, and he thought I could help him." The objections to this testimony set out in the ground are that it was "outside the presence of the other three defendants, and could not bear on their guilt or innocence," and that any statement made to Henry Crenshaw would be a self-serving declaration, and would not be admissible. In admitting the evidence the court said: "I will not admit it as bearing upon the guilt or innocence of these three young defendants on trial; I am admitting it purely as bearing upon the guilt or innocence of Mr. Henry Crenshaw." We think the evidence was admissible for the purpose stated.

■ In special ground 3 it is contended that a new trial should be granted because of the following alleged newly discovered evidence of the witness J. S. Burkhalter: "That on the 5th day of October, 1930, he found in the northern part of Warren county, Georgia, a furnace some three or four hundred yards from where

Earnest Peek then lived in Warren county, Georgia, and that there was a sled track from this furnace to where Earnest Peek then lived. Deponent says that said furnace was about eighteen by twelve inches in size. Deponent has seen the still that was found near Mr. Henry Crenshaw's house, which was testified about by Mr. G. P. Hogan, sheriff of Warren county, Ga., and it is the still that Mr. Hogan found near Mr. Henry Crenshaw's house, and which the defendant is indicted for operating. Deponent says that said still is about eight by twelve inches, and fits the furnace above testified to; that around said furnace was tin, and that around the still for which defendant is indicted for running was also tin, showing at both places the pot had been placed on the furnace, and tin around it to keep the fire to it, and looking as if the same still had been used in both places. The said Earnest Peek is the same Earnest Peek who was the principal witness for the State in the above stated case." That part of the foregoing testimony which has reference to the finding of the still near Peek's house is cumulative. See testimony of J. P. Hogan, supra. That part of said testimony which tends to show that the still referred to was the same still found near Henry Crenshaw's house might implicate Peek in the offense for which the Crenshaws were on trial, but would hardly acquit the Crenshaws of guilt,—unless, of course, the jury thought it impeached Peek, without whose testimony there could hardly have been a conviction; and testimony which is strictly impeaching in its nature is not good ground for a new trial. We hold that this exception is not good.

■ In special ground 4 it is contended that the court should have granted a new trial because of certain newly discovered evidence of P. D. Griffith, the gist of which is that the witness Peek told Griffith that he did not visit the still, or see it, as he testified, and that he did not report to Mr. Rainwater that the Crenshaws were making liquor, but told him that "Mr. Humphrey was making liquor there." We do not see how this testimony could be of benefit to the defendant unless it had the effect of impeaching Peek; and, as stated already, evidence which is strictly impeaching is not ground for a new trial.

■ The testimony of the witness Peek, together with the other evidence in the case, supports the conviction, and the trial judge did not err in overruling the general grounds of the motion for a new trial.

It may not be amiss to state here that we have gone into this case somewhat more fully than might be thought necessary, in order that the cases of the other three defendants indicted and convicted along with the movant might be abbreviated. In fact, every point raised in those cases has been discussed and decided in this case.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*